Archis A. Parasharami (SBN 321661)
aparasharami@mayerbrown.com
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3000
Fascimile: (202) 263-3300

Attorney for Defendants
AT&T INC., PACIFIC BELL
TELEPHONE CO., and DIRECTV, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

DAVID COTTRELL,

               Plaintiff,

     v.

AT&T INC., PACIFIC BELL TELEPHONE
CO., and DIRECTV, LLC,

               Defendants.

Case No. 19-cv-07672-JCS

**NOTICE OF MOTION AND RENEWED
MOTION OF DEFENDANTS AT&T
INC., PACIFIC BELL TELEPHONE
CO., AND DIRECTV, LLC TO
COMPEL ARBITRATION AND TO
STAY LITIGATION**

Date:      April 17, 2020
Time:     9:30 AM
Location:  G, 15th Floor (San Francisco)

Judge:    Hon. Joseph C. Spero

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

NOTICE OF MOTION AND MOTION ............................................................................. 1

STATEMENT OF ISSUE PRESENTED ............................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 2

BACKGROUND ................................................................................................................. 3

    A.    Cottrell Agreed To Arbitrate His Disputes. ................................................. 3

    B.    AT&T's Arbitration Provision Provides Consumers With Fair Procedures For The Resolution Of Individual Disputes. ................................................ 6

    C.    Cottrell Sues Defendants Notwithstanding His Arbitration Agreements. ............ 7

ARGUMENT ....................................................................................................................... 8

THE FAA REQUIRES THE ENFORCEMENT OF COTTRELL'S ARBITRATION AGREEMENTS .......................................................................... 8

    A.    Cottrell Agreed To Arbitrate. ..................................................................... 9

    B.    Cottrell's Claims Are Within The Scope Of His Arbitration Agreements. ........... 9

    C.    The Terms Of Cottrell's Arbitration Agreements Are Enforceable. .................. 11

        1.    The *McGill* rule is inapplicable because the relief Cottrell seeks is a private injunction—not a public one. .................................................. 11

        2.    If the Court believes that *McGill* might be applicable, it should defer ruling on AT&T's motion pending Supreme Court review of the Ninth Circuit's decisions ................................................................ 15

CONCLUSION .................................................................................................................. 18

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alascom, Inc. v. ITT N. Elec. Co.*,
727 F.2d 1419 (9th Cir. 1984) ..................................................................................17

*Alvarez v. T-Mobile USA, Inc.*,
2010 WL 5092971 (E.D. Cal. Dec. 7, 2010) ............................................................16

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)................................................................................................3, 8

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)..................................................................................................10

*Bell-Sparrow v. SFG*Proschoicebeauty*,
2019 WL 1201835 (N.D. Cal. Mar. 14, 2019)................................................. *passim*

*Blair v. Rent-A-Ctr., Inc.*,
928 F.3d 819 (9th Cir. 2019) .........................................................................3, 12, 15

*Cherny v. AT&T, Inc.*,
2010 WL 2572929 (C.D. Cal. Feb. 8, 2010)............................................................17

*Croucier v. Credit One Bank, N.A.*,
2018 WL 2836889 (S.D. Cal. June 11, 2018)..............................................3, 11, 12

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018)..............................................................................................16

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)........................................................................9

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)......................................................................................................9

*Hancock v. Am. Tel. & Tel. Co.*,
701 F.3d 1248 (10th Cir. 2012) .................................................................................9

*Johnson v. JP Morgan Chase Bank, N.A.*,
2018 WL 4726042 (C.D. Cal. Sept. 18, 2018) ...................................... 3, 13, 14, 15

*Kilgore v. KeyBank Nat'l Ass'n*,
718 F.3d 1052 (9th Cir. 2013) (*en banc*) ...............................................................11

*Kim v. CashCall, Inc.*,
2017 WL 8186683 (C.D. Cal. June 8, 2017) ...........................................................16

ii

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019) ...................................................................................................11

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) .......................................................................................................15

*Leyva v. Certified Grocers of Cal., Ltd.*,
   593 F.2d 857 (9th Cir. 1979) .........................................................................................15

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) .......................................................................................16

*McArdle v. AT&T Mobility LLC*,
   772 F. App'x 575 (9th Cir. June 28, 2019) .................................................................3, 15

*McElrath v. Uber Techs., Inc.*,
   2017 WL 1175591 (N.D. Cal. Mar. 30, 2017) ...............................................................16

*McGill v. Citibank, N.A.*,
   393 P.3d 85 (Cal. 2017) ...................................................................................... *passim*

*McGovern v. U.S. Bank N.A.*,
   362 F. Supp. 3d 850 (S.D. Cal. 2019) ..............................................................................3

*Meyer v. Uber Techs., LLC*,
   868 F.3d 66 (2d Cir. 2017)...............................................................................................9

*Milkowski v. Thane Int'l, Inc.*,
   2008 WL 11342962 (C.D. Cal. July 21, 2008) ...............................................................16

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) .......................................................................................................11

*Morris v. Ernst & Young LLP*,
   834 F.3d 975 (9th Cir. 2016) .........................................................................................16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .....................................................................................................10, 11

*Nationstar Mortg., LLC vm. RAM LLC*,
   2017 WL 1752933 (D. Nev. May 4, 2017)................................................................16, 17

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) .........................................................................................9

*Provo v. Rady Children's Hosp.-San Diego*,
   2015 WL 6144029 (S.D. Cal. July 29, 2015) .................................................................17

*Rappley v. Portfolio Recovery Assocs., LLC*,
   2017 WL 3835259 (C.D. Cal. Aug. 24, 2017)..............................................................3, 12

iii

*Revitch v. DIRECTV, LLC*,
  2018 WL 4030550 (N.D. Cal. Aug. 23, 2018) ..........................................................................10

*Roman v. Northrop Grumman Corp.*,
  2016 WL 10987312 (C.D. Cal. Dec. 14, 2016) ........................................................................16

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009) ...................................................................................................10

*Sponheim v. Citibank, N.A.*,
  2019 WL 2498938 (C.D. Cal. June 10, 2019) ................................................................ *passim*

*Tillage v. Comcast Corp.*,
  772 F. App'x 569 (9th Cir. 2019) ............................................................................................15

*United States v. Sutcliffe*,
  505 F.3d 944 (9th Cir. 2007) .....................................................................................................8

*Wright v. Sirius XM Radio Inc.*,
  2017 WL 4676580 (C.D. Cal. June 1, 2017) ......................................................................3, 13

**Statutes**

9 U.S.C. §§ 1-16 .............................................................................................................................1

9 U.S.C. § 2 ....................................................................................................................................8

9 U.S.C. § 3 ....................................................................................................................................9

**Other Authorities**

Webster's Third New International Dictionary (2002) ..................................................................10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that, on April 17, 2020, at 9:30 a.m., or as soon thereafter as counsel may be heard, before the Honorable Joseph C. Spero, in Courtroom G of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants AT&T Inc., Pacific Bell Telephone Co., and DIRECTV, LLC (collectively, "AT&T") shall and hereby do move the Court for an order compelling plaintiff David Cottrell to arbitrate his claims in accordance with his arbitration agreements and to stay the litigation pending the outcome.

This motion is authorized by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, and supported by the accompanying Memorandum of Points and Authorities, the Declarations of Connie Benson, Juan Zermeno, Tony Truppa, and Daniel E. Jones and exhibits already on file with the Court (*see* Dkt. Nos. 10-1 through 10-11), and such other written and oral argument as may be presented to the Court.

**STATEMENT OF ISSUE PRESENTED**

Whether the FAA requires enforcement of Cottrell's agreements to arbitrate his disputes with Defendants on an individual basis.

1

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

After AT&T moved to compel arbitration of Plaintiff David Cottrell's claims, Cottrell

3

filed an amended complaint. But the amended complaint does nothing to diminish the fact that

4

Cottrell has filed his claims in the wrong forum. As Cottrell acknowledges (First Amended

5

Complaint (FAC) ¶¶ 1, 16), he is an AT&T U-verse customer, who receives Internet and

6

television services from AT&T. In the course of registering to use his U-verse services, Cottrell

7

agreed that he would arbitrate all disputes and claims between him and AT&T on an individual

8

basis. The FAA requires him to honor that obligation.

9

Cottrell concedes that he agreed to AT&T's U-verse arbitration provision. FAC ¶ 49.

10

But his amended complaint instead signals that he intends to attempt to evade arbitration by

11

invoking *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017), in which the California Supreme

12

Court held that arbitration agreements that prevent consumers from pursuing so-called public

13

injunctions are invalid under California law. *See* FAC ¶¶ 10-11, 45-51.

14

*McGill* is inapposite, however, because the injunctive relief Cottrell seeks is for the

15

benefit of a specific subgroup not the general public as a whole. Cottrell's original complaint

16

alleged that AT&T signed up existing AT&T customers for DIRECTV Now accounts without

17

their authorization. The amended complaint makes the same allegations, and further speculates

18

that the same could happen to individuals who enter into an AT&T store or contact AT&T by

19

phone and give AT&T their payment information without completing the process of becoming

20

an AT&T customer. That marginal addition does nothing to convert Cottrell's requested

21

injunction from a private injunction into one on behalf of California's "general public"; Cottrell

22

continues to seek injunctive relief that benefits a specific subgroup of existing AT&T customers

23

or other individuals who already have given AT&T their payment information. Both the

24

California Supreme Court and the Ninth Circuit have recognized that the *McGill* rule does not

25

apply when the relief sought will not benefit the public as a whole. For that reason, numerous

26

district courts in this Circuit have held *McGill* inapplicable when—as here—a plaintiff seeks

27

what amounts to private injunctive relief on behalf of a class, rather than an injunction benefiting

28

the public in general.  *See*, *e.g.*, *Sponheim v. Citibank, N.A.*, 2019 WL 2498938, at *4-6 (C.D. Cal. June 10, 2019); *Bell-Sparrow v. SFG*Proschoicebeauty*, 2019 WL 1201835, at *5 n.9 (N.D. Cal. Mar. 14, 2019); *McGovern v. U.S. Bank N.A.*, 362 F. Supp. 3d 850, 857-58 (S.D. Cal. 2019); *Johnson v. JP Morgan Chase Bank, N.A.*, 2018 WL 4726042, at *6-8 (C.D. Cal. Sept. 18, 2018); *Croucier v. Credit One Bank, N.A.*, 2018 WL 2836889, at *4 (S.D. Cal. June 11, 2018); *Rappley v. Portfolio Recovery Assocs., LLC*, 2017 WL 3835259, at *5-6 (C.D. Cal. Aug. 24, 2017); *Wright v. Sirius XM Radio Inc.*, 2017 WL 4676580, at *9-10 (C.D. Cal. June 1, 2017).

Moreover, even if *McGill* were applicable here, the FAA would preempt it.  We acknowledge that a panel of the Ninth Circuit has held that the FAA does **not** preempt the *McGill* rule.  *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 830-31 (9th Cir. 2019).  In a concurrently filed opinion, the same panel applied *McGill* in refusing to enforce AT&T's arbitration agreement—the same arbitration agreement upheld by the U.S. Supreme Court in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).  *See McArdle v. AT&T Mobility LLC*, 772 F. App'x 575, 575 (9th Cir. June 28, 2019).  AT&T submits that those panel decisions contravene Supreme Court precedent.  Supreme Court review is being sought in *McArdle* (as well as in a companion case involving Comcast); petitions for certiorari in those cases are expected to be filed on February 27.  If the Court concludes that Cottrell is in fact seeking public injunctive relief as defined in *McGill*, it should stay any decision on this motion to compel arbitration pending resolution of Supreme Court proceedings in *McArdle*.

## BACKGROUND

### A.    Cottrell Agreed To Arbitrate His Disputes.

Cottrell is an AT&T customer who has received AT&T U-verse Internet service and U-verse television service.  *See* Decl. of Connie Benson ¶¶ 9-10.[1]  He acknowledges in the complaint that he has agreed to "AT&T's U-verse arbitration provision."  FAC ¶ 49; *see also id.* ¶ 16 (alleging that Cottrell "maintained an AT&T U-verse cable-service account").

AT&T's records confirm that Cottrell agreed to the terms and conditions governing U-

---

[1]    Citations to declarations and exhibits refer to the materials submitted with AT&T's original motion to compel arbitration (at Dkt. Nos. 10-1 through 10-11).

Verse Internet and television services.  Cottrell signed up for U-verse Internet and television services in September 2015.  Benson Decl. ¶ 10.  To use his U-verse Internet service, Cottrell was required to register online.  *Id.* ¶ 3.  The "Welcome" screen of the registration process informs the customer that he or she is about to proceed to "the Terms & Conditions" page:



*Id.* Ex. 1.  On the "Terms & Conditions" page, the customer is presented with hyperlinks to both the "U-verse Internet Terms of Service" and the "U-verse Voice and TV Terms of Service." Each hyperlink, if clicked, displays a webpage containing the applicable contract terms.  *Id.* ¶ 6. In order to proceed to the next step of the registration process, the customer must check a box to confirm that "I have read and agree to the" terms.  *Id.* ¶ 7.  Once the customer checks the boxes on the screen, the "Continue" button activates and the customer may continue the registration process.  *Id.*  Above the "Continue" button is an acknowledgment that "By clicking Continue, I acknowledge that I have read and agree to the *Terms & Conditions* provided above."  *Id.* Exs. 2, 3.  The completed screen looks like this:

//

//

//

//

4

*Id.* Ex. 3. AT&T's records show that Cottrell completed the online registration process—necessarily accepting the Internet and television terms of service—and activated his U-verse Internet service on September 12, 2015. *Id.* ¶ 10.

The terms governing Cottrell's use of these services require arbitration of "all disputes and claims between you and AT&T." *E.g.*, Decl. of Juan Zermeno Ex. 1 § 13(a) (Internet); Decl. of Tony Truppa Ex. 1 § 11(a) (Television; requiring arbitration of "all disputes and claims between us"). The provision also specifies that "[r]eferences to 'AT&T,' 'you,' and 'us' include our respective subsidiaries, *affiliates*, agents, employees, predecessors in interest, successors, and assigns, as well as all authorized or unauthorized users or beneficiaries of services or equipment under this or prior Agreements between us." Zermeno Decl. Ex. 1 § 13(a) (emphasis added); Truppa Decl. Ex. 1 § 11(a) (emphasis added). The arbitration provision further states that "[t]his agreement to arbitrate is intended to be broadly interpreted" and "includes . . . [c]laims arising out of or relating to any aspect of the relationship between us, whether based in

5

contract, tort, statute, fraud, misrepresentation or any other legal theory." *E.g.*, Zermeno Decl. Ex. 1 § 13(a).  And the arbitration provision specifies that "**YOU AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.**  Further, unless both you and AT&T agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding." *E.g.*, *id.*

   **B.    AT&T's Arbitration Provision Provides Consumers With Fair Procedures For The Resolution Of Individual Disputes.**

   AT&T's arbitration provision includes several features that ensure that customers have a simple and efficient means of resolving any disputes that may arise:

- **Cost-free arbitration:**  For claims up to $75,000, "AT&T will pay all [American Arbitration Association ("AAA")] filing, administration, and arbitrator fees" unless the arbitrator determines the customer's claim "is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b))."

- **$10,000 minimum award:**  If the arbitrator issues an award in favor of a customer that is greater than "AT&T's last written settlement offer made before an arbitrator was selected," then AT&T will pay the customer $10,000 rather than any smaller arbitral award.

- **Double attorneys' fees:**  If the arbitrator awards the customer more than "AT&T's last written settlement offer made before an arbitrator was selected," then "AT&T will . . . pay [the customer's] attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses (including expert witness fees and costs), that [the] attorney reasonably accrues for investigating, preparing, and pursuing [the] claim in arbitration."[2]

- **Small claims court option:**  Either party may bring a claim in small claims court as an alternative to arbitration.

- **Flexible consumer procedures:**  Arbitration will be conducted under the AAA's

---

[2]     The provision for double attorneys' fees "supplements any right to attorneys' fees and expenses [the customer] may have under applicable law." *E.g.*, Zermeno Decl. Ex. 1 § 13(e). Thus, even if an arbitrator were to award a customer less than the company's last settlement offer, the customer would be entitled to an attorneys' fees award to the same extent as if his or her individual claim had been brought in court.

Consumer Arbitration Rules, which the AAA designed with consumers in mind.[3]

- **Choice of in-person, telephonic, or no hearing:**  For claims of $10,000 or less, the customer has the exclusive right to choose whether the arbitrator will conduct an in-person hearing, a telephonic hearing, or a "desk" arbitration in which "the arbitration will be conducted solely on the basis of documents submitted to the arbitrator."

- **Conveniently located hearing:**  Arbitration will take place "in the county (or parish) of [the customer's] billing address."

- **AT&T disclaims right to seek attorneys' fees:**  "Although under some laws AT&T may have a right to an award of attorneys' fees and expenses if it prevails in an arbitration, AT&T agrees that it will not seek such an award."

- **No confidentiality requirement:**  Either party may publicly disclose the arbitration and its result.

- **Full individual remedies available:**  The arbitrator can award any form of relief on an individualized basis (including statutory and punitive damages, attorneys' fees, and injunctions that would affect the claimant alone) that a court could award.

- **Right to a written decision:**  "Regardless of the manner in which the arbitration is conducted, the arbitrator shall issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award is based."

*E.g.*, Zermeno Decl. Ex. 1 §§ 13(a)-(f).

### C.    Cottrell Sues Defendants Notwithstanding His Arbitration Agreements.

Despite having agreed to arbitration, Cottrell filed this putative class action against Defendants in California state court.  Defendants then removed the case to this Court.  *See* Dkt. No. 1.  On February 3, 2020, Cottrell filed a first amended complaint.  Dkt. No. 14.

Cottrell alleges that AT&T improperly charged him and other existing AT&T customers for DIRECTV Now accounts without authorization.  FAC ¶¶ 2, 23-24.  He asserts statutory claims for alleged violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.

---

[3]    The arbitration provision references the AAA's Commercial Arbitration Rules and Supplementary Procedures for Consumer-Related Disputes.  *E.g.*, Zermeno Decl. Ex. 1 § 13(c). But in September 2014, the AAA replaced those rules for administering consumer disputes with its new Consumer Arbitration Rules.  Decl. of Daniel Jones Ex. 1, at 1.  The AAA applies the Consumer Arbitration Rules "whenever" an agreement has "provided for arbitration by the American Arbitration Association ('AAA')" and the agreement has "specifie[d] that the Supplementary Procedures for Consumer-Related Disputes shall apply."  *Id.* Ex. 1 at 9.

7

Code § 17200 *et seq.*, California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, and the California Consumer Records Act ("CCRA"), Cal. Civ. Code § 1798.80 *et seq.*—as well as common-law claims for unjust enrichment and conversion. FAC ¶¶ 62-101. Cottrell seeks restitution, declaratory relief, and attorneys' fees and costs, as well as an injunction seeking "the invalidation of any unauthorized AT&T accounts, services, and products, and an accounting for same." *Id.* at 28-29 (Prayer for Relief).

## ARGUMENT

### THE FAA REQUIRES THE ENFORCEMENT OF COTTRELL'S ARBITRATION AGREEMENTS.

The FAA applies to any "written" agreement to arbitrate that appears in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Here, both criteria are met: (i) Cottrell's arbitration agreements are in writing (*see* pages 3-6, *supra*); and (ii) contracts for Internet service involve interstate commerce, because "the Internet is an instrumentality and channel of interstate commerce." *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) (quotation marks omitted). Indeed, AT&T's arbitration provision itself specifies that the contract "evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision." *E.g.*, Zermeno Decl. Ex. 1 § 13(a).

Under the FAA, Cottrell's arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 563 U.S. at 344. And this "liberal federal policy favoring arbitration agreements" applies "notwithstanding any state substantive or procedural policies to the contrary." *Id.* at 346 (quotation marks omitted).

Here, no grounds "exist at law or in equity for the revocation of" Cottrell's arbitration agreements. As we discuss below, he validly accepted those agreements, they cover the claims he asserts in this lawsuit, and their terms are enforceable as a matter of federal law. Accordingly, the Court should compel arbitration of Cottrell's claims and stay the litigation pending that

arbitration.  *See* 9 U.S.C. § 3 (providing for a stay of court proceedings pending the resolution of arbitration); *see also*, *e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

**A.      Cottrell Agreed To Arbitrate.**

To begin with, Cottrell entered into binding agreements with AT&T to arbitrate his disputes.  As discussed above, Cottrell validly consented to his U-verse Internet and television terms when he completed his online registration and activation process.  *See* pages 3-6, *supra*.  Indeed, Cottrell acknowledges in his complaint that he agreed to "AT&T's U-verse arbitration provision."  FAC ¶ 49.

That concession is for good reason.  As the Second Circuit has explained—applying California law—"[c]ourts routinely uphold" agreements "which require users to click an 'I agree' box after being presented with a list of terms and conditions of use."  *Meyer v. Uber Techs., LLC*, 868 F.3d 66, 75 (2d Cir. 2017) (citing *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) (collecting cases)).  The Ninth Circuit has also endorsed the reasoning in *Fteja*, citing it with approval in noting that courts enforce agreements "where the user is required to affirmatively acknowledge the agreement before proceeding with use of the website" or service.  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176-77 (9th Cir. 2014).

Moreover, the Tenth Circuit has concluded that the similar manner in which U-verse customers assented to AT&T's then-current arbitration provision is fully enforceable.  The court explained that "clickwrap agreements" like AT&T's Internet terms of service "are of the type that are routinely . . . upheld" and noted that, as here, "customers cannot access U-verse Internet service without going through a registration process" that requires clicking a button "to manifest assent to the Internet terms."  *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1257-58 (10th Cir. 2012) (quotation marks omitted).

In short, there can be no dispute that Cottrell agreed to arbitrate.

**B.      Cottrell's Claims Are Within The Scope Of His Arbitration Agreements.**

AT&T's arbitration provision covers the claims that Cottrell asserts here.  That provision states that it "is intended to be broadly interpreted" and requires arbitration of "***all*** disputes and

claims" between him and AT&T, with no exceptions. *E.g.*, Zermeno Decl. Ex. 1 § 13(a) (emphasis added). The agreement further makes clear that references to "AT&T" and "us" include AT&T's "subsidiaries, ***affiliates***, agents, employees, predecessors in interest, successors, and assigns." *Id.* (emphasis added).

The plain language of AT&T's broad arbitration provision therefore encompasses the claims against all of the defendants here, including DIRECTV. As the complaint acknowledges, DIRECTV is an "affiliate[]" of Pacific Bell Telephone Co. because both DIRECTV and Pacific Bell Telephone Co. are "subsidiaries" of AT&T Inc. FAC ¶¶ 16-19. The complaint also recognizes that AT&T completed its acquisition of DIRECTV in July 2015—*i.e.*, before Cottrell accepted the U-verse terms in September 2015. *Id.* ¶ 6 & n.7; *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (holding that "the plain and ordinary meaning of 'affiliate' is "'a company effectively controlled by another or ***associated with others under common ownership*** or control.') (emphasis added) (quoting Webster's Third New International Dictionary (2002)). Accordingly, this case is readily distinguishable from *Revitch v. DIRECTV, LLC*, 2018 WL 4030550 (N.D. Cal. Aug. 23, 2018), *appeal pending*, No. 18-16823 (9th Cir.), in which this Court concluded that AT&T Mobility's arbitration provision did not apply to "future affiliates"—*i.e.*, "an entity that became affiliated with AT&T Mobility . . . after [the plaintiff] entered into the original contract." *Id.* at *11. Here, DIRECTV was already an existing affiliate of AT&T at the time that Cottrell agreed to arbitrate.[4]

Finally, even if there were uncertainty as to whether Cottrell's claims fall within the scope of his arbitration agreements—and there is none—"as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also, e.g., AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts

---

[4]   We respectfully disagree with the Court's decision in *Revitch* for the reasons explained in DIRECTV's briefing on appeal in that case.

should be resolved in favor of coverage.") (quotation marks omitted). Just last year, the Supreme Court made clear that the "FAA provides the default rule for resolving certain ambiguities in arbitration agreements," including the rule "that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration," and that rule preempts any state law to the contrary—including the state-law canon "that ambiguity in a contract should be construed against the drafter." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417-19 (2019) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Moses H. Cone*, 460 U.S. at 24-25)).

### C.     The Terms Of Cottrell's Arbitration Agreements Are Enforceable.

#### 1.     The *McGill* rule is inapplicable because the relief Cottrell seeks is a *private* injunction—not a *public* one.

In his complaint, Cottrell asserts that his arbitration agreements are unenforceable under California's *McGill* rule (FAC ¶¶ 10-11, 45-51) and tacks onto his statutory claims a request for what he denominates "public injunctive relief" (*id.* ¶¶ 70, 78, 86). In *McGill*, the California Supreme Court held that a contractual waiver of a consumer's right to seek an injunction under the UCL and CLRA on behalf of the "general public" violates California public policy. 393 P.3d at 94. Critically, though, *McGill* applies only to requests for truly ***public*** injunctive relief—and not to requests for ***private*** injunctions artfully styled as requests for "public" injunctive relief. *McGill* is therefore inapplicable here, because Cottrell's requested injunction is, at bottom, a "private" injunction that would benefit only himself and a similarly situated—indeed, narrow— subset of "AT&T customers" located in California whom AT&T allegedly charged for an unauthorized account or service. FAC ¶ 28; *see also id.* at ¶¶ 32, 33, 34, 41-44 (alleging that the purported misconduct occurred to "customers" of AT&T).

In order to constitute a "public injunction" under *McGill*, the relief sought must "'by and large benefit the public'" in general. *Croucier*, 2018 WL 2836889, at *4 (quoting *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1060 (9th Cir. 2013) (*en banc*)). Public injunctions typically seek to "benefit 'the public directly by the elimination of deceptive practices,' but do

11

not otherwise benefit the plaintiff[.]" *Blair*, 928 F.3d at 824 (quoting *McGill*, 393 P.3d at 90). "Private" injunctions, in contrast, "ha[ve] the primary purpose or effect of redressing or preventing injury to an individual plaintiff—*or to a group of individuals similarly situated to the plaintiff*." *McGill*, 393 P.3d at 90 (emphasis added); *accord Bell-Sparrow*, 2019 WL 1201835, at *5 n.9 (quoting *McGill*).

Since *McGill* was decided, courts have routinely compelled arbitration of purportedly "public injunction" claims that, in reality, seek a "private" injunction that would not benefit the broader general public. *See, e.g.*, *Croucier*, 2018 WL 2836889, at *4-5 (request to enjoin debt-collection practices constitutes a "private" rather than "public" injunction, because class members rather than the general public would be the beneficiaries); *Rappley*, 2017 WL 3835259, at *5-6 (a "closer inspection" of plaintiff's claims "reveals that the relief she seeks is intended to redress and prevent further injury" to putative class members and therefore "does not constitute public injunctive relief").

In particular, courts have characterized as "private" those injunctions *that seek principally to benefit a defendant's customers* rather than the public at large.

In at least four cases, federal courts have held that the *McGill* rule did not apply when, as here, the potential beneficiaries of an injunction were the customers of a defendant business.

- In *Sponheim*, the court compelled individual arbitration of claims challenging Citibank's foreign-transaction fee practices, despite the plaintiff's invocation of the *McGill* rule. 2019 WL 2498938, at *5. The court held that the injunction sought was fundamentally "private" in nature because the "primary aim" of the plaintiff's suit was to "gain[] compensation for injury for himself and others similarly situated" (there, all "California plaintiffs that have held Citibank checking accounts within the applicable statute of limitations"). *Id.* at *5. The court noted that the plaintiff's claims "ar[ose] out of the contractual rights and obligations between Citibank and its customers, not deceptive advertising or marketing to the general public as in *McGill*." *Id.*

- In *Johnson*, the court held that *McGill* did not bar individual arbitration of claims brought on behalf of five putative classes of Chase Bank customers seeking to enjoin the company from charging particular fees despite the plaintiffs' characterization of that relief as a "public" injunction. 2018 WL 4726042, at *7. The court held that, irrespective of how the claims were pleaded, "the relief Plaintiffs seek does not constitute public injunctive relief"; rather, "a closer inspection reveals that the relief sought is actually intended to redress and prevent further injury to a [defined] group of plaintiffs . . . who have already incurred the allegedly unlawful fees"—not "the general public." *Id.*

- In *Wright*, the court compelled arbitration of claims alleging that Sirius failed to honor "lifetime" subscriptions to satellite radio service. Notwithstanding the plaintiff's characterization of the requested injunction as "public," the specific relief sought—injunctions barring Sirius from terminating lifetime subscriptions, failing to honor lifetime subscriptions previously purchased, and charging any additional monies for such services—all "solely benefit the putative class members" who had purchased lifetime subscriptions. 2017 WL 4676580, at *9. The court thus concluded that the plaintiff "only seeks private relief" and that the *McGill* rule therefore did not apply. *Id.* at *9-10.

- And in *Bell-Sparrow*, the court held that Citibank was entitled to arbitrate claims by a plaintiff alleging that she had incurred an unlawful credit card debt. The court held that *McGill* was not triggered by a request for an injunction against the allegedly unlawful fee plaintiff was charged. *See* 2019 WL 1201835, at *5 n.9.

Cottrell's statutory claims here are materially indistinguishable from those that the above courts have found to be fundamentally "private" in nature. Even a cursory inspection of Cottrell's allegations confirms that the "primary aim" (*Sponheim*, 2019 WL 2498938, at *5) of this suit is compensation for Cottrell and similarly situated existing AT&T customers. His requested "public" injunctions specifically seek to provide an accounting to "***AT&T's California***

*customers*" for "monies obtained" from them in the past; provide notice to customers allegedly already "victimized" by AT&T of their right "to restitution of all monies paid to AT&T," and "the invalidation of any unauthorized AT&T accounts, services, and products."  FAC ¶ 70(B)-(D) & Prayer For Relief (emphasis added).

That relief does not benefit the public at large; indeed, there is not a single allegation in the complaint that non-customers have been affected by the challenged conduct.  As noted above (at __), the only allegations Cottrell offers with respect to non-customers is to speculate that a "potential AT&T customer" who enters an AT&T store or calls AT&T and provides his or her payment information could possibly be "charged by AT&T or one of its subsidiaries for an account or service [he or she] did not authorize."  FAC ¶ 22; *see also id.* ¶ 30.  As also noted above, that additional speculation does nothing to change the fact that there would be no way to charge members of the public for unauthorized accounts unless their information was already in AT&T's position—either because they were already AT&T customers or had otherwise provided their payment information to AT&T during the process of becoming one.  That remains a defined "group of plaintiffs," not the general public.  *Johnson*, 2018 WL 4726042, at *7.  And even among existing AT&T customers, the requested injunctions seek relief for only the narrow subset of AT&T customers whom AT&T has allegedly charged for an unauthorized account or service.  Accordingly, the principal (and likely sole) beneficiaries of those injunctions would be Cottrell and the putative class of AT&T customers he seeks to represent "who have already incurred the allegedly unlawful fees."  *Id.*

Cottrell cannot avoid that result by claiming to be seeking to enjoin "future violations" of the law on behalf of the "the general public."  FAC ¶ 70(A).  Courts have rejected comparable attempts to convert a private injunction into a public one by re-styling it as being directed against further violations of the law.  As Judge Gonzalez Rogers put it, "[m]erely requesting relief which would generally enjoin a defendant from wrongdoing does not elevate requests for injunctive relief to requests for *public* injunctive relief."  *Bell-Sparrow*, 2019 WL 1201835, at *5 n.9; *see also Johnson*, 2018 WL 4726042, at *6 (same); *Sponheim*, 2019 WL 2498938, at *4 ("Merely

declaring that a claim seeks a public injunction . . . is not sufficient to bring that claim within the bounds of the rule set forth in *McGill*.") (quotation marks omitted).  Thus, Cottrell's bare labelling of his requested injunction as being for the public "does not elevate" his request for manifestly ***private*** injunctive relief into a public injunction.  *Johnson*, 2018 WL 4726042, at *6; *accord Bell-Sparrow*, 2019 WL 1201835, at *5 n.9.  Cottrell does not, for example, seek to change AT&T's marketing to the public at large.  *See, e.g.*, *Sponheim*, 2019 WL 2498938, at *5 (distinguishing between injunctions addressing allegedly unlawful "marketing" directed at the public and injunctions aimed at business practices directed only at a defendant's customers).

In short, *McGill* does not apply because Cottrell is not seeking public injunctive relief.

### 2. If the Court believes that *McGill* might be applicable, it should defer ruling on AT&T's motion pending Supreme Court review of the Ninth Circuit's decisions.

Even if the *McGill* rule were applicable, Cottrell's arbitration agreements still would be enforceable because *McGill* is preempted by the FAA.  To be sure, a Ninth Circuit panel has held that the FAA does not preempt *McGill*.  *Blair*, 928 F.3d at 830-31; *McArdle*, 772 F. App'x at 575; *Tillage v. Comcast Corp.*, 772 F. App'x 569, 569 (9th Cir. 2019).  But petitions for certiorari will soon be filed in *McArdle* and *Tillage*, and AT&T therefore respectfully requests that if the Court concludes that *McGill* might be applicable, it defer ruling on this motion until the completion of Supreme Court review in those cases.

This Court has broad discretion to stay its ruling "pending resolution of independent proceedings which bear upon the case" if the Court "find[s] it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).  The power to issue such a stay derives from the Court's "inherent" authority to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" (*Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)) and requires consideration of the "competing interests which will be affected"— including the relative "hardship or inequity" that may result from granting the stay, or from requiring these proceedings to go forward, and whether the stay could "simplify[] . . . issues,

1    proof, and questions of law" (*Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)).

2          Most importantly, a stay pending Supreme Court review in *McArdle* and *Tillage* carries

3    the potential to greatly "simplify[]" these proceedings.  Courts have routinely granted stays when

4    further appellate proceedings could result in conservation of party and judicial resources by

5    streamlining or obviating the need for further proceedings.  *See*, *e.g.*, *Nationstar Mortg., LLC v.*

6    *RAM LLC*, 2017 WL 1752933, at *1-2 (D. Nev. May 4, 2017) (granting a stay "[t]o save the

7    parties from the need to invest resources preparing for trial or additional discovery . . . before the

8    United States Supreme Court has ruled on the petitions for certiorari review in [a governing

9    case]"); *Milkowski v. Thane Int'l, Inc.*, 2008 WL 11342962, at *2 (C.D. Cal. July 21, 2008)

10   ("agree[ing] . . . that a stay pending petition for writ of certiorari will conserve judicial and party

11   resources" because "[i]f the Supreme Court were to grant certiorari and resolve the issues in

12   favor of [defendant], then further action by this Court may not be necessary").

13         Indeed, on several occasions courts in this Circuit have stayed proceedings relating to the

14   arbitrability of claims pending resolution of a petition for writ of certiorari seeking reversal of a

15   then-governing Ninth Circuit precedent.  *See Roman v. Northrop Grumman Corp.*, 2016 WL

16   10987312, at *3 (C.D. Cal. Dec. 14, 2016).  In *Roman*, the court recognized that it was bound by

17   the Ninth Circuit's then-governing ruling in *Morris v. Ernst & Young LLP*, 834 F.3d 975 (9th

18   Cir. 2016) that bilateral arbitration agreements in employment contracts are unenforceable under

19   the National Labor Relations Act ("NLRA").[5]  However, the court also recognized that a reversal

20   of *Morris* "would require bilateral arbitration in [*Roman*]" and concluded that a stay "would

21   [therefore] serve 'the orderly course of justice'" by avoiding potentially unnecessary

22   proceedings.  *Roman*, 2016 WL 10987312, at *3; *see also McElrath v. Uber Techs., Inc.*, 2017

23   WL 1175591, at *1 (N.D. Cal. Mar. 30, 2017) (granting a stay during the pendency of Supreme

24   Court proceedings in *Morris*); *Kim v. CashCall, Inc.*, 2017 WL 8186683, at *8 (C.D. Cal. June 8,

25   2017) (same); *Alvarez v. T-Mobile USA, Inc.*, 2010 WL 5092971, at *3 (E.D. Cal. Dec. 7, 2010)

26

27   ─────────────

28   [5]      The Supreme Court granted certiorari, consolidated *Morris* with *Epic Systems Corp. v. Lewis*, and reversed *Morris* in light of its ruling in *Epic*.  *See Epic*, 138 S. Ct. 1612, 1632 (2018).

(same during the pendency of Supreme Court proceedings in *Concepcion*; citing "[s]everal other California district courts" that had done the same).  As in *Roman*, a reversal of the Ninth Circuit's decision in *Blair* would "require bilateral arbitration" of all of Cottrell's claims.  That is, if the FAA preempts the *McGill* rule, then AT&T's arbitration agreement and the parties' waiver of their respective rights to bring collective actions are enforceable.

The relative balance of equities likewise favors a stay.  As the Ninth Circuit recognized more than 35 years ago, "the advantages of arbitration—speed and economy—are lost forever" when a party who is entitled to arbitration is forced instead to proceed in court.  *Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984).

On the other side of the scale, "[t]he only potential damage that may result from a stay is that the parties will have to wait longer for resolution of this case"—a risk courts have consistently characterized as negligible in the context of stays pending petitions for further appellate review.  *E.g.*, *Nationstar*, 2017 WL 1752933, at *2 ("The Court finds minimal any possible damage that this stay may cause" "pending the Supreme Court's disposition of the petitions for certiorari."); *Provo v. Rady Children's Hosp.-San Diego*, 2015 WL 6144029, at *2 (S.D. Cal. July 29, 2015) ("[T]he Supreme Court is likely to issue a decision within one year and neither party will be significantly prejudiced by a less than one year delay."); *Cherny v. AT&T, Inc.*, 2010 WL 2572929, at *2 (C.D. Cal. Feb. 8, 2010) (delay associated with awaiting resolution of a petition for further appellate review "will not prejudice anyone").  Indeed, granting the stay might not "ultimately lengthen the life of this case" at all, given that an equal delay could result if the Court were to proceed notwithstanding the pendency of Supreme Court review and then "rebriefing or supplemental briefing [were] necessitated."  *Nationstar*, 2017 WL 1752933, at *2.

In sum, if the Court concludes that the *McGill* rule might apply, it should delay its consideration of this motion until the conclusion of Supreme Court proceedings in *McArdle* and *Tillage* and dispose of the motion as appropriate in light of the final decisions in those cases.

1

## CONCLUSION

2       The Court should compel Cottrell to arbitrate his claims in accordance with his

3  arbitration agreements and stay this action pending the outcome.

4

5       Dated: February 24 24, 2020                 MAYER BROWN LLP

6
                                                    By: /s/ Archis A. Parasharami
7                                                       Archis A. Parasharami

8
                                                    *Attorneys for Defendants AT&T*
9                                                   *Inc., Pacific Bell Telephone Co., and*
                                                    *DIRECTV, LLC*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28