United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID COTTRELL,

Plaintiff,

v.

AT&T INC., et al.,

Defendants.

Case No. 19-cv-07672-JCS

**ORDER REGARDING MOTION TO COMPEL ARBITRATION AND STAY**

Re: Dkt. No. 17

## I. INTRODUCTION

Defendants AT&T Inc., Pacific Bell Telephone Co., and DIRECTV, LLC (collectively, "AT&T") move to compel arbitration of Plaintiff David Cottrell's claims, or in the alternative, to stay this case pending a decision by the U.S. Supreme Court on petitions for certiorari raising similar issues. Cottrell contends that AT&T cannot enforce the mandatory arbitration provision in the parties' agreement because the agreement's waiver of public injunctive relief is unenforceable under the California Supreme Court's decision in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), and because the agreement by its terms provides that the arbitration provision as a whole is void if that waiver is found unenforceable. The Court finds the matter suitable for resolution without oral argument and VACATES the hearing previously set for May 29, 2020. The motion to compel arbitration is DENIED, but the case is STAYED pending further order of the Court.

No later than fourteen days after the Supreme Court grants or denies the petition for certiorari in either *Comcast Corporation v. Tillage*, No. 19-1066 (U.S.), or *AT&T Mobility LLC v. McArdle*, No. 19-1078 (U.S.), the parties shall file a joint statement apprising this Court of that development and briefly stating each party's position as to whether the stay should be lifted. The initial case management conference set for May 29, 2020 is CONTINUED to August 14, 2020 at 2:00 PM. The parties shall file a joint case management statement no later than August 7, 2020. If the stay imposed by this order has not been lifted by July 31, 2020, either party may file an

administrative motion to continue the case management conference.[1]

## II. BACKGROUND

### A. Allegations of the First Amended Complaint and Terms of the Agreement

Prior to the events at issue, Cottrell had been an AT&T customer for around four years, subscribing to AT&T's U-verse broadband internet service. 1st Am. Compl. ("FAC," dkt. 14) ¶ 24. Cottrell called AT&T in September of 2018 to ask whether any promotions were available that could reduce the cost of his internet service. *Id.* When a customer service representative tried to sell Cottrell a video streaming service, DirecTV Now, Cottrell said that he was not interested and asked to speak to a supervisor. *Id.* The supervisor apologized for the customer service representative's aggressive sales pitch and told Cottrell that the supervisor had secured him a discount on his U-verse service. *Id.* Six months later, in March of 2019, Cottrell discovered that he had been charged several hundred dollars for the DirecTV Now service that he had declined to purchase. *Id.* ¶ 25. Cottrell had difficulty canceling the unwanted service and ultimately received a refund from his credit card company rather than from AT&T. *Id.* ¶ 26.

Cottrell alleges that his experience was part of a pattern of misconduct in which AT&T representatives enrolled existing AT&T customers in the DirecTV Now product against the customers' will and deceptively encouraged consumers who were not yet AT&T customers to enroll in free trials of DirecTV Now, without revealing that automatic charges would begin after the trial period ended. *See id.* ¶¶ 27–44. Cottrell concedes that he agreed to a contract providing for mandatory arbitration of disputes, but asserts that the arbitration provision is unenforceable under the California Supreme Court's decision in *McGill* because it purports to waive his right to seek public injunctive relief and contains a clause voiding the arbitration provision as a whole if that waiver is found to be unenforceable. *Id.* ¶¶ 45–51; *see also* Zermeno Decl. Ex. 1 ("Agreement," dkt. 10-6). The relevant provision reads as follows:

> The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. **YOU**

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

> **AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.** Further, unless both you and AT&T agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. If this specific proviso is found to be unenforceable, then the entirety of this arbitration provision shall be null and void.

Agreement § 13(f).

Cottrell asserts the following claims on behalf of himself and a putative class of similarly situated consumers: (1) violation of California's Consumer Legal Remedies Act (the "CLRA"), FAC ¶¶ 62–71; (2) violation of California's Unfair Competition Law (the "UCL"), *id.* ¶¶ 72–79; (3) violation of the California Consumer Records Act (the "CCRA"), *id.* ¶¶ 80–87; (4) unjust enrichment, *id.* ¶¶ 88–92; (5) conversion, *id.* ¶¶ 93–97; and (6) declaratory judgment that AT&T's arbitration provisions are unenforceable, that its practice of activating unauthorized services is unlawful, and that it is liable for damages for that practice, *id.* ¶¶ 98–101.

The following portion of Cottrell's complaint addresses the purportedly public injunctive relief that he seeks:

> . . . Plaintiff therefore seeks a public injunction pursuant to CLRA § 1780(a)(2):
>
> A. Enjoining AT&T from committing future violations of the CLRA;
>
> B. Requiring AT&T to provide an accounting of all monies obtained from AT&T's California customers pursuant to the unauthorized accounts and services that AT&T opened and charged them for during the applicable limitations period;
>
> C. Requiring AT&T to give individualized notice to all AT&T's California customers whom AT&T victimized by opening and charging them for unauthorized accounts or services, during the applicable limitations period under the CLRA and applicable California law, including notice to each such customer of his or her rights under same (including his or right to restitution of all monies paid to AT&T);
>
> D. Requiring AT&T to provide individualized notice to each such customer of the procedures available for enforcing the customer's rights under the CLRA; and
>
> E. Establishing an effective monitoring mechanism to ensure AT&T's continued compliance with the terms of this injunction.

*Id.* ¶ 70; *see also id.* ¶¶ 78, 86 (seeking the same relief under the UCL and CCRA); *id.* at 28 ¶ D (prayer for relief, seeking "[p]ublic injunctive relief, including permanently enjoining AT&T from performing further unlawful acts as alleged herein, creating a mechanism for monitoring AT&T's conduct designed to prevent its occurrence going forward, notice to the affected class members, the invalidation of any unauthorized AT&T accounts, services, and products, and an accounting for same").

**B. Procedural History and Parties' Arguments**

Cottrell filed this action on November 21, 2019. After AT&T first moved to compel arbitration, *see* dkt. 10, Cottrell filed his operative first amended complaint, and the parties stipulated to a briefing schedule for AT&T's present motion in response to that complaint. *See* dkt. 13.

AT&T argues that Cottrell does not seek "public injunctive relief" as that term is used in *McGill*, because the relief he seeks would benefit only "a specific subgroup of existing AT&T customers or other individuals who already have given AT&T their payment information." Mot. (dkt. 17) at 2. AT&T asks the Court to follow other decisions that have held *McGill* inapplicable where a plaintiff seeks injunctive relief applicable only or primarily to a class of similarly situated individuals, such as a defendant's customers. *Id.* at 11–15 (citing, *e.g.*, *Sponheim v. Citibank, N.A.*, No. SACV 19-264 JVS (ADSx), 2019 WL 2498938 (C.D. Cal. June 10, 2019); *Bell-Sparrow v. SFG*Proschoicebeauty*, No. 18-cv-06707-YGR, 2019 WL 1201835 (N.D. Cal. Mar. 14, 2019); *Johnson v. JP Morgan Chase Bank, N.A.*, No. EDCV 17-2477 JGB (SPx), 2018 WL 4726042 (C.D. Cal. Sept. 18, 2018); *Wright v. Sirius XM Radio Inc.*, No. SACV 16-01688 JVS (JCGx), 2017 WL 4676580 (C.D. Cal. June 1, 2017)).

Cottrell argues that the arbitration provision is unenforceable because the Ninth Circuit, considering the same provision, so held in *Roberts v. AT&T Mobility LLC*, 801 F. App'x 492, 496 (9th Cir. 2020), *affirming* No. 15-cv-03418-EMC, 2018 WL 1317346 (N.D. Cal. Mar. 14, 2018). Opp'n (dkt. 18) at 4–5. Cottrell asks the Court to consider the enforceability of the arbitration clause as a threshold issue, without needing to reach the question of whether Cottrell in fact seeks public injunctive relief in this case. *Id.* at 6–7. According to Cottrell, because the waiver of relief



United States District Court
Northern District of California

beyond that needed to redress an individual's claim is unenforceable under *Roberts* and *McGill*, the contract's non-severability clause——or in Cottrell's words, "poison pill" clause—voids the arbitration provision as a whole. *Id.* at 7–8. AT&T responds that a single case declining to address whether the plaintiff actually sought public injunctive relief is an outlier, and the weight of authority requires such an inquiry. Reply (dkt. 20) at 2–5.

Cottrell also argues that he in fact seeks public injunctive relief similar to relief that the Ninth Circuit recognized as implicating *McGill* in *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 831 n.3 (9th Cir. 2019), and he asks this Court to follow Judge Chen's decision in *Eiess v. USAA Federal Savings Bank*, 404 F. Supp. 3d 1240 (N.D. Cal. 2019), which found unpersuasive the "narrow definition of public injunctive relief" used in *Wright* and similar cases. *Eiess*, 494 F. Supp. 3d at 1258; *see* Opp'n at 8–12. AT&T highlights specific injunctions Cottrell seeks that would benefit only similarly situated AT&T customers, and argues that *Eiess* is distinguishable in that the plaintiff there sought to compel the defendant to alter public-facing documents, which Cottrell does not seek here. Reply at 5–8. AT&T asks the Court to follow decisions from the Central District of California holding that requests for broad injunctions against future violations of California's consumer protection statutes do not implicate *McGill*. *Id.* at 6.

In the alternative, AT&T contends that the Federal Arbitration Act ("FAA") preempts *McGill*'s rule that an arbitration clause cannot waive a plaintiff's right to public injunctive relief under California law. Mot. at 3. AT&T acknowledges that the Ninth Circuit has held to the contrary in a published opinion binding on this Court, but moves to stay this case (if the Court does not compel arbitration) until the Supreme Court resolves a petition for certiorari that AT&T has filed in another case raising that issue. *Id.* at 3, 15–17. Cottrell argues that a pending petition for certiorari is not a sufficient reason to stay this case when the Ninth Circuit precedent at issue is clear and has not created a split from the law of other circuits. Opp'n at 12–14. In its reply, AT&T contends that certiorari is likely because the Supreme Court has frequently reversed California and Ninth Circuit decisions declining to compel arbitration, and asserts that the Supreme Court will probably resolve the petitions for certiorari by the end of June. *Id.* at 8–10.

**III. ANALYSIS**

**A. Legal Standard to Compel Arbitration**

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Because arbitration is a matter of contract, the question of arbitrability is, in principle, an issue for judicial determination. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). The court's role in addressing a question of arbitrability is "limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the court finds that both of these requirements are met, the FAA requires it to enforce the provision in accordance with its terms. *Id.*

The FAA "was created to counter prevalent judicial refusal to enforce arbitration agreements . . . and has been interpreted to embody 'a liberal federal policy favoring arbitration.'" *Mortenson v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Thus, the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25. Nonetheless, "[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (internal quotation marks omitted). Consequently, courts may apply the "presumption favoring arbitration . . . only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and . . . is legally enforceable and best construed to encompass the dispute." *Id.* at 303. Even where such a

presumption arises, arbitration should be ordered only if the presumption is not rebutted. *Id.* at 301. Where the presumption applies, courts "compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 746 (9th Cir. 2014) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks and citation omitted)).

The Supreme Court in *Granite Rock* explained that the presumption in favor of arbitration "is merely an acknowledgment of the FAA's commitment to 'overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.'" 561 U.S. at 299 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). The Supreme Court acknowledged that it has "never held that this policy overrides the principle that a court may submit to arbitration 'only those disputes . . . that the parties have agreed to submit.' . . . Nor [has the Court] held that courts may use policy considerations as a substitute for party agreement." *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

Where the parties "clearly and unmistakably" indicate their intent to do so, an agreement may delegate "threshold issues" of arbitrability, including the "enforceability, revocability or validity" of an arbitration clause, to the arbitrator rather than to a court. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (citations omitted).

As a general rule, courts apply state contract law in determining the validity and scope of an arbitration agreement. *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998). Thus, in determining whether there is a valid agreement to arbitrate, "courts must 'apply ordinary state-law principles that govern the formation of contracts.'" *Id.* (quoting *First Options*, 514 U.S. at 944). Both parties here rely primarily on cases considering California law, and appear to agree that California law governs at least the question of whether the arbitration provision at issue is enforceable under the California Supreme Court's decision in *McGill*.

**B. AT&T's Arbitration Provision Is Unenforceable**

In *McGill*, the California Supreme Court considered an arbitration clause that the parties

agreed "purport[ed] to preclude [the plaintiff] from seeking public injunctive relief in arbitration, in court, or *in any forum*," and held that the clause was "invalid and unenforceable under state law insofar as it purports to waive [the plaintiff's] statutory right to seek such relief." 2 Cal. 5th at 956, 961. The court noted that a request for public injunctive relief does not require a claim to be brought as a class or representative action, but is instead a remedy available to an individual private plaintiff, so long as that plaintiff has suffered injury sufficient for standing to bring a private action under the UCL. *Id.* at 959. The Ninth Circuit has held that the FAA does not preempt *McGill*'s rule that arbitration agreements cannot altogether preclude an award of public injunctive relief. *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 822 (9th Cir. 2019).

An older doctrine of the California Supreme Court, known as the *Broughton-Cruz* rule, prohibited arbitration of claims under the UCL and similar statutes. *See generally Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303 (2003); *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066 (1999). The Ninth Circuit has held in a published opinion binding on this Court that the *Broughton-Cruz* doctrine is inconsistent with subsequent decisions of the United States Supreme Court interpreting the FAA, and thus is preempted. *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 934–37 (9th Cir. 2013). This Court has previously held in light of that precedent that claims for public injunctive relief may be decided by an arbitrator if an arbitration agreement so provides. *Lee v. Postmates Inc.*, No. 18-cv-03421-JCS, 2018 WL 4961802, at *9–10 (N.D. Cal. Oct. 15, 2018).

The arbitration agreement in this case, however, *prevents* an arbitrator from awarding public injunctive relief, by limiting the arbitrator to awarding "declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." *See* FAC ¶ 49; Agreement § 13(f). Nothing in the arbitration agreement suggests that such relief could be awarded by another forum, such as a court. Instead, as the parties appear to agree in their arguments on the present motion, the agreement is intended to prevent the award of such relief altogether. The agreement therefore violates *McGill*—as another decision from this district considering an identical AT&T arbitration

provision has held, and as the Ninth Circuit affirmed. *See Roberts*, 801 F. App'x at 496.[2] The question, then, is what consequence that violation has for enforcing the arbitration agreement with respect to Cottrell's claims here.

According to Cottrell, the agreement itself provides the answer. The paragraph of the agreement that includes the unenforceable limitation on the arbitrator's authority also provides that "[i]f this specific proviso is found to be unenforceable, then the entirety of this arbitration provision shall be null and void." Agreement § 13(f). In Cottrell's view, because there is no real dispute that the "specific proviso" at issue violates *McGill*—and multiple courts have so held—there is no question that the arbitration provision as whole is void.

One decision from the Southern District of California took that approach where, much like here, the agreement at issue included a clause stating that "the entire Arbitration Agreement will be unenforceable" if its limitations on consolidated or representative actions were found unenforceable, and other courts had already found the same agreement unenforceable under *McGill*. *See Lotsoff v. Wells Fargo Bank, N.A.*, No. 18-cv-02033-AJB-JLB, 2019 WL 4747667, at *2–3 (S.D. Cal. Sept. 30, 2019). The *Lotsoff* court held that it "need not decide" whether the plaintiff actually sought public injunctive relief because the restriction on awarding such relief violated *McGill* and the agreement's "'poison pill' language unambiguously state[d] that the entire Arbitration Agreement will be unenforceable" as a result. *Id.* at *4–5.

While AT&T is correct that *Lotsoff* is an exception to the more common approach of addressing whether a plaintiff actually seeks public injunctive relief, including in *McGill* and *Blair*, see Reply at 2–4, the agreements at issue in those precedential cases did not include a "poison pill" equivalent to the clause at issue here. To the contrary, the agreement in *Blair* provided that if its restriction on an arbitrator awarding "relief that would affect RAC account holders other than you" were held unenforceable, "then that claim (and only that claim) must be

[2] "The arbitration clause here, like the one in *Blair*, prohibits public injunctive relief in any forum, including arbitration. As discussed previously, such a clause is unenforceable in California under the *McGill* rule. Because we are bound by our decision in *Blair*, we hold that AT&T's arbitration agreement is unenforceable. Accordingly, we affirm the district court's order denying AT&T's motion to compel arbitration." *Roberts*, 801 F. App'x at 496.

severed from the arbitration and may be brought in court." *Blair*, 928 F.3d at 823. Accordingly, unlike here, applying that provision would have had no effect on whether any claims were or were not subject to arbitration if the plaintiff was not actually seeking public injunctive relief. In *McGill*, the agreement at issue does not appear to have addressed whether the bar on public injunctive relief was severable from the remainder of its arbitration provision. *See McGill*, 2 Cal. 5th at 952 (summarizing the agreement); *McGill v. Citibank, N.A.*, No. G049838, 2017 WL 4382034, at *3 (Cal. Ct. App. Oct. 3, 2017) (on remand from the Supreme Court, stating that issues including severability remained to be determined by the trial court).

An earlier Ninth Circuit case cited by AT&T, in which the court declined to reach the question of whether the then-effective (but now defunct, at least in federal court) *Broughton-Cruz* rule applied because the plaintiffs did not actually seek public injunctive relief, similarly does not indicate whether the contract at issue contained anything resembling the "poison pill" clause at the center of this case. *See Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1056 (9th Cir. 2013); *see also Wright*, 2017 WL 4676580, at *1–2 (not addressing whether the agreement contained a comparable poison pill); *Eiess*, 404 F. Supp. 3d at 1246 (same); *Johnson*, 2018 WL 4726042, at *4–5 (same). In *Sponheim*, the court relied on the *absence* of a poison pill provision to determine that the lack of a request for true public injunctive relief was dispositive, and expressly distinguished a California trial court decision that had relied on such a provision to hold an arbitration agreement invalid without reaching the nature of the relief requested. *Sponheim*, 2019 WL 2498938, at *6 (distinguishing *Wallace v. Wells Fargo Bank, N.A.*, No. 2017-1-CV-31775 2018 Cal. Super. LEXIS 4314 (Cal. Sup. Ct. Aug. 7, 2018)). Perhaps the best case for AT&T on this issue is *Rappley v. Portfolio Recovery Associates, LLC*, where the Central District of California held that the lack of a request for public injunctive relief avoided any *McGill* issue *despite* a comparable poison pill clause, but that court did so in the context of a choice-of-law analysis not at issue here, holding that the absence of such a request meant applying Utah law (which includes no analogue of *McGill*) to interpret the contract and compel arbitration would not "contravene fundamental California policy" in that case. *Rappley*, No. EDCV 17-108 JGB (SPx), 2017 WL 3835259, at *3, *6 (C.D. Cal. Aug. 24, 2017).

The Court finds the analysis of *Lotsoff* persuasive as applied to a contract including the sort of "poison pill" at issue here, and would likely find the arbitration provision unenforceable under *McGill* and the terms of the poison pill clause even if Cottrell did not himself seek public injunctive relief. Regardless, however, Cottrell's complaint seeks such relief.

AT&T argues that Cottrell does not seek truly public injunctive relief because the injunction that he seeks would benefit only Cottrell and similarly situated existing AT&T customers who have provided AT&T with payment information. Cottrell contends that his requests for injunctions against future violations of California's consumer protection statutes, among other relief that he seeks, constitute public injunctive relief. *See* Opp'n at 8–10.

In *Blair*, the Ninth Circuit summarily rejected an argument similar to AT&T's, holding that *McGill* applied where the plaintiff "s[ought] to enjoin future violations of California's consumer protection statutes, relief oriented to and for the benefit of the general public." *Blair*, 928 F.3d at 831 n.3. *McGill* itself held that a complaint sought public injunctive relief where it "request[ed], among other things, an injunction prohibiting Citibank from continuing to engage in its allegedly illegal and deceptive practices." *McGill*, 2 Cal. 5th at 953.

Considering this distinction in the context of the older *Broughton-Cruz* doctrine, the Ninth Circuit held that plaintiffs were not seeking public injunctive relief where the injunctions requested "plainly would benefit only the approximately 120 putative class members." *Kilgore*, 718 F.3d at 1061. According to that decision, injunctive relief is "public" within the meaning of this doctrine "only when 'the benefits of granting injunctive relief by and large do not accrue to that party, but to the general public in danger of being victimized by the same deceptive practices as the plaintiff suffered.'" *Id.* at 1060 (quoting *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1080 (1999), *overruled on other grounds as recognized by Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937 (9th Cir. 2013)).

In *Wright*, the plaintiff sought injunctive relief specific to satellite radio customers who had purchased "lifetime subscriptions" from the defendant, as well as "'an order enjoining Defendant from committing such unlawful, unfair, and fraudulent business practices' and 'making such material misrepresentations and failing to disclose or actively concealing its practice of

regularly canceling and limiting or prohibiting transfers of lifetime subscriptions.'" 2017 WL 4676580, at *9. The court held that "such vague, generalized allegations do not request public injunctive relief" because the relief requested would not "have the 'primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public,'" but instead would provide "merely 'incidental'" public benefit. *Id.* (quoting *McGill*, 2 Cal. 5th at 955) (some internal quotation marks omitted). Several other decisions from the Central District of California have followed *Wright* to hold that vague and conclusory requests for public injunctive relief are not cognizable in determining whether the apply *McGill*. *See Sponheim*, 2019 WL 2498938, at *4–5; *Johnson*, 2018 WL 4726042, at *6–7; *see also Rappley*, 2017 WL 3835259, at *6 (not citing *Wright*, but taking substantially the same approach). One decision from this district has cited *Wright* with approval for this rule, albeit in a footnote in a case where it is not clear that the pro se plaintiff meaningfully argued the point and "her 'Prayer for Relief' ma[de] no mention of such relief, let alone injunctive relief of any kind." *Bell-Sparrow*, 2019 WL 1201835, at *5 n.9.

A recent decision by the Central District disagreed with *Wright*, holding that "nothing in the cited portion of *McGill* . . . lends itself to the kind of distinction the *Wright* court was making," and noting that "the California Supreme Court in *McGill* reiterated that an injunction 'against a defendant's deceptive methods, acts, and practices'—such as those available under the CLRA, UCL, and the FAL—'generally benefit[s] the public,' as is required for injunctive relief to be public." *Nguyen v. Tesla, Inc.*, No. 8:19-cv-01422-JLS-JDE, 2020 WL 2114937, at *5 (C.D. Cal. Apr. 6, 2020) (quoting *McGill*, 2 Cal. 5th at 955). The *Nguyen* court held that requests for injunctions against future violations of California consumer protection statutes were sufficient to trigger the *McGill* rule. *Id.* at *4–5. In *Eiess*, Judge Chen similarly "d[id] not find persuasive the Central District cases . . . that take a narrow definition of public injunctive relief because those cases do not address the fact that McGill allowed public injunctive relief in a very similar situation to the case at bar." *Eiess*, 404 F. Supp. 3d at 1258 (declining to follow *Johnson*, *Rappley*, and *Wright*).

In this Court's view, *Nguyen* and *Eiess* have the better approach. Cottrell seeks an injunction barring AT&T generally from any future violations of the CLRA and other California

consumer protection laws. *See* FAC ¶¶ 70(A), 78, 86. Such relief—"to enjoin future violations of California's consumer protection statutes"—is plainly "oriented to and for the benefit of the general public." *Blair*, 928 F.3d at 831 n.3. Cottrell also seeks to enjoin "AT&T from performing further unlawful acts as alleged [in his complaint]," *id.* at 28 ¶ D (prayer for relief), with such allegations not limited to unauthorized charges for existing customers like Cottrell, but also encompassing purportedly deceptive practices in inducing members of the public to enroll in free trials of AT&T services that later led to automatic billing, *id.* ¶¶ 31–32. That relief would also benefit the public at large, or at least any member of the public who happened to browse at an AT&T retail store. *See Eiess*, 404 F. Supp. 3d at 1258–59 (rejecting an argument "that the remedy of public injunctive relief is inapplicable in the instant case because [the defendant's] services are offered to a subset of the general public," and noting that if "relief in a given case were designed to protect a subset of the general public—such as children, the elderly, women, or non-English speakers—such relief would hardly be deemed 'nonpublic' in nature").

The fact that Cottrell *also* seeks other relief more narrowly tailored to a similarly situated class is immaterial. While controlling decisions have looked to whether relief "primarily" addresses a private dispute or "'by and large' benefits the general public," those decisions do not require a plaintiff to forego separate forms of private relief in order to bring a claim for cognizable public relief, but are better understood as examining whether a particular form of relief sought by the plaintiff would serve generally to benefit the public. *See McGill*, 2 Cal. 5th at 955 (quoting *Broughton*, 21 Cal. 4th at 1079). In *McGill*, for example, the California Supreme Court noted that the plaintiff "request[ed], *among other things*, an injunction prohibiting Citibank from continuing to engage in its allegedly illegal and deceptive practices." *Id.* at 953 (emphasis added). The court did not examine the "other things" sought by that plaintiff to determine whether any private relief included therein outweighed the public benefit of barring future deceptive practices. *See id.*

Nor does this Court have any occasion on the present motion to determine either whether Cottrell would in fact be entitled to the broad relief that he seeks or whether his requests for such relief satisfy relevant pleading standards. The arbitration agreement purports to delegate "all disputes and claims" to an arbitrator, except for: (1) actions brought in small claims court;

United States District Court
Northern District of California

(2) reports to government agencies that might themselves take enforcement actions; and (3) "issues relating to the scope and enforceability of the arbitration provision." *See* Agreement § 13(a), (c). AT&T likely could have written an agreement that would sever disputes as to a plaintiff's entitlement to public injunctive relief and reserve those issues for determination by a court. Instead, its agreement purports to bar such relief entirely, and provides that the remedy for finding that bar unenforceable is to void the arbitration provision as a whole. *Id.* § 13(f).

If it were enforceable, the agreement would require that all of Cottrell's claims—including his requests for public injunctive relief—must be submitted to an arbitrator, not this Court, and the arbitrator would be required to deny such relief regardless of the merits of Cottrell's claims. The Court may only examine whether those claims are sufficient if that delegation is not enforceable. Having determined that it is not, the Court applies the agreement's express statement that, as a result, the arbitration provision as a whole is void. The motion to compel arbitration is therefore DENIED.

### C. Motion to Stay

To determine whether a court should exercise its discretion to enter a stay under its inherent authority, the court considers the following three "'competing interests'": (1) "'the possible damage which may result from the granting of a stay'"; (2) "'the hardship or inequity which a party may suffer in being required to go forward'"; and (3) "'the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 268 (1936)). "'[I]f there is even a fair possibility that the stay . . . will work damage to some one else,' the party seeking the stay 'must make out a clear case of hardship or inequity.'" *Id.* at 1112 (quoting *Landis*, 299 U.S. at 255) (ellipsis in original).

Subsidiaries of AT&T have filed a petition for certiorari in another case seeking a ruling that the *McGill* rule is preempted by the FAA. *See* Petition for Certiorari, *AT&T Mobility LLC v. McArdle*, No. 19-1078 (U.S.), at p. i (Question Presented). The Ninth Circuit stayed its mandate applying *McGill* in that case pending final disposition by the Supreme Court, *see McArdle v.*

*AT&T Mobility LLC*, No. 17-17246, ECF Doc. No. 75 (9th Cir. Jan. 30, 2020) (order), and did the same over a plaintiff's opposition in another case where a petition for certiorari raised the same question, *Tillage v. Comcast Corp.*, No. 18-15288, ECF Doc. No. 71 (9th Cir. Jan. 23, 2020).

Although in many cases the mere possibility of the Supreme Court granting a pending petition for certiorari would not be sufficient to warrant a stay, the petitions in *McArdle* and *Tillage* have been distributed for conference, and a decision in the near future is likely. Denying a stay would force AT&T to litigate a claim that, if the Supreme Court grants certiorari and holds that *McGill* is preempted, might properly belong in arbitration. The Ninth Circuit has recognized that a party forced to litigate a claim that should have been arbitrated suffers a "serious, perhaps, irreparable" injury. *Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984), *disapproved on other grounds by Abernathy v. S. Cal. Edison*, 885 F.2d 525, 527 (9th Cir. 1989). That risk outweighs the de minimis harm to Cottrell (and perhaps the putative class and public at large) of a brief stay to determine whether the Supreme Court will grant the petitions in *McArdle* and *Tillage* and review this issue.

Moreover, as a practical matter, AT&T would likely exercise its right under 9 U.S.C. § 16(a) to appeal this order if a stay is denied, and given the approach that the Ninth Circuit has taken in *McArdle* in *Tillage*, there is a good chance that court would await a decision on the pending petitions for certiorari before requiring AT&T to litigate this case. Denial of a stay by this Court would only invite appellate proceedings that are unlikely to be resolved before the Supreme Court acts on the petitions for certiorari.

The motion is therefore GRANTED, and the case is STAYED pending further order of the Court.

## IV. CONCLUSION

For the reasons discussed above, AT&T's motion to compel arbitration is DENIED, its motion to stay is GRANTED, and the case is STAYED pending further order of the Court. The

/ / /

/ / /

/ / /

parties shall file a joint status report no later than fourteen days after the Supreme Court resolves the petition for certiorari in either *McArdle* or *Tillage*.

**IT IS SO ORDERED.**

Dated: May 27, 2020

JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California