United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID COTTRELL,

Plaintiff,

v.

AT&T INC., et al.,

Defendants.

Case No. 19-cv-07672-JCS

**ORDER REGARDING MOTION TO DISMISS IN PART FIRST AMENDED COMPLAINT**

Re: Dkt. No. 42

## I. INTRODUCTION

Plaintiff David Cottrell alleges that Defendants AT&T Inc., DIRECTV, LLC ("DirecTV"), and Pacific Bell Telephone Co. (collectively, "AT&T") enrolled him in a subscription service and charged him hundreds of dollars without his consent. AT&T moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss four of Cottrell's claims: his claim under the California Customer Records Act (the "CCRA"), because AT&T contends that Cottrell has not alleged a security "breach" as required for that claim; and his claims under the Unfair Competition Law (the "UCL"), for unjust enrichment, and for conversion, because Cottrell's credit card company refunded the amount that AT&T charged him. The Court finds the matter suitable for resolution without oral argument and VACATES the hearing previously set for August 21, 2020. The case management conference is CONTINUED to 2:00 PM the same day. The parties should use the same instructions previously provided to appear remotely via Zoom.

For the reasons discussed below, the motion is GRANTED in part and DENIED in part. Cottrell's claim under the CCRA is DISMISSED with leave to amend, and Cottrell may file a second amended complaint no later than September 4, 2020 if he wishes to pursue that claim.[1]

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

## II. BACKGROUND

### A. Allegations of the First Amended Complaint

Because a plaintiff's allegations are generally taken as true in resolving a motion to dismiss under Rule 12(b)(6), this section summarizes the allegations of Cottrell's complaint as if true. Nothing in this order should be construed as resolving any issue of fact that might be disputed at a later stage of the case.

Prior to the events at issue, Cottrell had been an AT&T customer for around four years, subscribing to AT&T's U-verse broadband internet service. 1st Am. Compl. ("FAC," dkt. 14) ¶ 24. Cottrell called AT&T in September of 2018 to ask whether any promotions were available that could reduce the cost of his internet service. *Id.* When a customer service representative tried to sell Cottrell a video streaming service, DirecTV Now, Cottrell said that he was not interested and asked to speak to a supervisor. *Id.* The supervisor apologized for the customer service representative's aggressive sales pitch and told Cottrell that the supervisor had secured him a discount on his U-verse service. *Id.* Six months later, in March of 2019, Cottrell discovered that he had been charged several hundred dollars for the DirecTV Now service that he had declined to purchase. *Id.* ¶ 25. Cottrell had difficulty canceling the unwanted service and ultimately received a refund from his credit card company Bank of America rather than from AT&T. *Id.* ¶ 26.

Cottrell asserts the following claims on behalf of himself and a putative class of similarly situated consumers: (1) violation of California's Consumer Legal Remedies Act, *id.* ¶¶ 62–71; (2) violation of the UCL, *id.* ¶¶ 72–79; (3) violation of the CCRA, *id.* ¶¶ 80–87; (4) unjust enrichment, *id.* ¶¶ 88–92; (5) conversion, *id.* ¶¶ 93–97; and (6) declaratory judgment that AT&T's arbitration agreement is unenforceable,[2] that its practice of activating unauthorized services is

[2] The Court previously determined that the arbitration agreement is unenforceable, denied AT&T's motion to compel arbitration, briefly stayed the case pending the Supreme Court's decision on a petition for certiorari in another case raising an issue relevant to the order denying arbitration, and lifted the stay after the Supreme Court denied certiorari. *See* Order re Mot. to Compel Arbitration & Stay (dkt. 37), *Cottrell v. AT&T Inc.*, No. 19-cv-07672-JCS, 2020 WL 2747774 (N.D. Cal. May 27, 2020); Order Lifting Stay (dkt. 41), *Cottrell v. AT&T Inc.*, No. 19-cv-07672-JCS, 2020 WL 3432645 (N.D. Cal. June 23, 2020). AT&T's appeal of this Court's order declining to compel arbitration is currently pending before the Ninth Circuit. *See Cottrell v. AT&T*, No. 20-16162 (9th Cir.).

unlawful, and that it is liable for damages for that practice, *id.* ¶¶ 98–101.

**B. The Parties' Arguments**

AT&T argues that Cottrell's CCRA claim should be dismissed because that statute requires "'a breach of the security of the system'" resulting in disclosure of a customer's personal information to "'an unauthorized person,'" and thus does not apply to Cottrell's allegations that AT&T personnel who were authorized to access his information used it for unauthorized purposes. Mot. (dkt.42) at 4–5 (quoting Cal. Civ. Code § 1798.82(a)). Cottrell contends that his allegations support an inference that his personal information was transferred from AT&T Inc. to DirecTV, and that regardless, the statute should be construed as prohibiting even unauthorized access by a defendant's employees, in order to give meaning to an exception for "'[g]ood faith acquisition of personal information by an employee . . . for the purposes of the . . . business,'" and because the statute refers to access by an "'unauthorized *person*'" rather than a "third party." Opp'n (dkt. 46) at 9–10 (quoting Cal. Civ. Code § 1798.82(a), (g)) (emphasis added by Cottrell). AT&T responds that Cottrell's theory of disclosure to DirecTV is inconsistent with his complaint, which treats DirecTV as interchangeable with AT&T Inc. and Pacific Bell, and argues that the "authorization" at issue in the CCRA is authorization *by AT&T* to access information stored in its systems, not authorization by Cottrell. Reply (dkt. 47) at 1–4. Both AT&T and Cottrell rely entirely on the language of the statute; neither party cites any caselaw addressing the CCRA. *See* Mot. at 4–5; Opp'n at 9–10; Reply at 1–4.

AT&T contends that Cottrell's UCL claim should be dismissed because, having received a refund from Bank of America, Cottrell has not "'lost money or property'" as required by that statute, citing district court decisions holding that consumers who received refunds from the defendants could not proceed under the UCL. Mot. at 6 (quoting Cal. Bus. & Prof. Code § 17204, and citing *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1151 (N.D. Cal. 2010); *Gonzales v. Comcast Corp.*, No. 10-cv-01010-LJO-BAM, 2012 WL 10621, at *8 (E.D. Cal. Jan. 3, 2012), *recommendation adopted*, 2012 WL 217708 (E.D. Cal. Jan. 23, 2012)). AT&T similarly moves to dismiss Cottrell's claims for unjust enrichment and conversion for lack of damages after

he received a refund. *Id.* at 7–8.[3] Cottrell argues that the "collateral source rule" applies to preserve his claims where he received reimbursement from a third party unrelated to AT&T. Opp'n at 3–6. Cottrell also contends that his unjust enrichment claim can proceed solely based on AT&T's wrongful gain, without need to show that Cottrell suffered damages. *Id.* at 7–8.

## III. ANALYSIS

### A. Legal Standard

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court generally takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

[3] AT&T does not argue that Cottrell lacks standing under Article III of the Constitution. *See* Reply at 5.

enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

**B. Cottrell's CCRA Claim**

The CCRA requires disclosure of security breaches to California residents whose personal information is disclosed in such a breach:

> A person or business that conducts business in California, and that owns or licenses computerized data that includes personal information, shall disclose a breach of the security of the system following discovery or notification of the breach in the security of the data to a resident of California (1) whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person, or, (2) whose encrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the encryption key or security credential was, or is reasonably believed to have been, acquired by an unauthorized person and the person or business that owns or licenses the encrypted information has a reasonable belief that the encryption key or security credential could render that personal information readable or usable.

Cal. Civ. Code § 1798.82.

> For purposes of this section, "breach of the security of the system" means unauthorized acquisition of computerized data that compromises the security, confidentiality, or integrity of personal information maintained by the person or business. Good faith acquisition of personal information by an employee or agent of the person or business for the purposes of the person or business is not a breach of the security of the system, provided that the personal information is not used or subject to further unauthorized disclosure.

*Id.* § 1798.82(g).

Cottrell argues that AT&T was required to disclose the use of his personal information to subscribe him to DirecTV Now because he "alleg[es] that *he* did not authorize the AT&T employee to access his personal information and use it or send it to DirecTV to open an unauthorized DirecTV Now account," and the "statute does not limit lack of authorization to the *defendant's* lack of authorization." Opp'n at 10–11 (first emphasis added). The Court agrees with AT&T that, in addressing a "breach," the CCRA is plainly focused on access to a defendant's computer system without the defendant's authorization. Cottrell cites no case holding that the

CCRA requires a company to notify its customers whenever it uses or discloses a customer's personal information in a manner the customer has not specifically authorized. While such allegations might, as Cottrell suggests in a footnote, *id.* at 10 n.6, support a claim under some other theory, the CCRA is concerned with how companies respond to intrusions into their computer systems, not how the companies themselves choose to use information their customers have provided. *See generally, e.g.*, *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1206 (N.D. Cal. 2014) (considering a CCRA claim where "hackers gained unauthorized access to Adobe's servers"); *Eisenhower Med. Ctr. v. Superior Court*, 226 Cal. App. 4th 430, 432–33 (2014) (addressing in passing a CCRA claim where a "computer was stolen from" the defendant containing patients' records, which was not at issue on appeal). The exception for good faith use by an employee "for the purposes of the person or business"—i.e., the defendant—reinforces that the CCRA does not restrict how a defendant might choose to use its customers' information.

Cottrell does not allege that anyone accessed his personal information without *AT&T's* permission, or that AT&T learned of such unauthorized access and failed to notify him as required by the CCRA. This claim is therefore DISMISSED with leave to amend.

### C. Cottrell's Unjust Enrichment Claim

The parties cite California appellate decisions taking divergent approaches to whether a plaintiff's damages are an essential element of a claim for unjust enrichment.[4] *Compare County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 542–43 (2007) (holding that unjust enrichment

---

[4] AT&T does not dispute that California recognizes a claim of unjust enrichment. The Ninth Circuit held in a 2015 decision that no such claim existed, but that courts could "'construe the cause of action as a quasi-contract claim seeking restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221 (2014)). Subsequent unpublished decisions by the Ninth Circuit have differed as to whether that remains true, or whether a later 2015 decision by the California Supreme Court recognized such a claim. *Compare Baiul-Farina v. Lemire*, 804 F. App'x 533, 537 (9th Cir. 2020) ("The complaint alleged an unjust enrichment claim against Ukraine, but '[u]njust enrichment is not a cause of action' under California law." (quoting *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004)), *with Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) ("But since [the district court decision at issue], the California Supreme Court has clarified California law, allowing an independent claim for unjust enrichment to proceed in an insurance dispute." (citing *Hartford Cas. Ins. Co. v. J.R. Mktg., LLC*, 61 Cal. 4th 988, 1000 (2015))). In the absence of argument to the contrary, the Court holds for the purpose of this order that unjust enrichment is a valid claim under California law.

may be based on a defendant's wrongful gain rather than a plaintiff's loss, particularly in cases implicating fiduciary duties), *with Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593–96 (2008) (dismissing an unjust enrichment claim where the plaintiffs failed to show damages, and holding that statements to the contrary in *Walsh* were both dicta and distinguishable).

The Ninth Circuit has resolved this issue of California law in favor of Cottrell's position that a plaintiff need not show damages to recover for unjust enrichment. Pursuant to Ninth Circuit precedent, "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss," and "regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599–600 (9th Cir. 2020) (citing, *e.g.*, *Walsh*, 158 Cal. App. 4th at 542; *CTC Real Estate Servs. v. Lepe*, 140 Cal. App. 4th 856, 860–61(2006)); *see also In re Tobacco Cases II*, 240 Cal. App. 4th 779, 800 (2015) ("There are two types of disgorgement: restitutionary disgorgement, which focuses on the plaintiff's loss, and nonrestitutionary disgorgement, which focuses on the defendant's unjust enrichment." (citation, internal quotation marks, and emphasis omitted)).

AT&T argues in its reply that the California appellate court's decision in *Walsh* is distinguishable, but does not address the Ninth Circuit's decision affording *Walsh* an expansive reading in *Facebook*, despite Cottrell's citation of that case in his opposition brief. *See* Reply at 6–7; Opp'n at 7. Ninth Circuit interpretations of state law are "binding in the absence of any subsequent indication from the California courts that [the Ninth Circuit's] interpretation was incorrect." *Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983). AT&T cites no California decisions postdating the Ninth Circuit's decision earlier this year in *Facebook*. AT&T's motion to dismiss Cottrell's claim for unjust enrichment is therefore DENIED.[5]

[5] In the alternative, even if Cottrell were required to suffer a loss to bring a claim for unjust enrichment, the Court would apply the collateral source rule to this claim as discussed below in the context of Cottrell's claim for conversion.

**D. Cottrell's Conversion Claim**

The elements of a claim for conversion under California law are: "'(1) the plaintiff's ownership or right to possession of . . . property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.'" *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014) (quoting *L.A. Fed. Credit Union v. Madatyan*, 2019 Cal. App. 4th 1383, 1387 (2012)). AT&T argues that Cottrell has not alleged damages because he received a refund from his credit card provider Bank of America, and that the collateral source rule does not apply because Bank of America was involved in the transaction at the outset. *See* Reply at 7–8

"The collateral source rule provides that where 'an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor.'" *Shaffer v. Debbas*, 17 Cal. App. 4th 33, 40 (1993) (quoting *Helfend v. S. Cal. Rapid Transit Dist.*, 2 Cal. 3d 1, 6 (1970)). "Put another way, 'Payments made to or benefits conferred on the injured party from other sources [i.e., those unconnected to the defendant] are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.'" *Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal. 4th 541, 551 (2011) (quoting Rest. 2d Torts, § 920A(2)) (alteration in original). In the face of criticism, the California Supreme Court has justified this doctrine as based on "a policy judgment in favor of encouraging citizens to purchase and maintain insurance for personal injuries and for other eventualities." *Helfend*, 2 Cal. 3d at 10.

"While commonly applied to exclude evidence of insurance payments, over the years, a variety of benefits provided to plaintiffs have been held to be collateral sources of compensation that should not be considered in mitigation of a plaintiff's damages." *Smock v. State*, 138 Cal. App. 4th 883, 886–87 (2006). Neither party cites, and the Court is not aware of, any decision addressing the collateral source rule as applied to a credit card refund under California law.

Considering a claim under an Illinois consumer protection law, the Eight Circuit held that the Illinois Supreme Court likely would not apply the collateral source doctrine where a plaintiff received a refund of a purportedly fraudulent charge from his credit card company:

> Holmes cites no case applying the doctrine to an ICFA claim and we are skeptical that the Illinois Supreme Court would find it applicable to these circumstances. If Holmes was indemnified from any liability arising from the suspicious charge, it was through operation of federal law and his contract with the financial institution that issued his card. That contract is connected to [Defendant] SuperValu through a network of other agreements. *See generally* [*Cmty. Bank of Trenton v. Schnuck Mkts, Inc.*, 887 F.3d 803, 807–09 (7th Cir. 2018)]. Under those agreements, card-issuing banks generally bear the initial cost of "indemnifying their customers for unauthorized transactions and issuing new cards," but may seek to recoup losses from retailers through a cost recovery process. *Id.* at 809. Holmes's indemnity was not "wholly independent" from the alleged tortfeasor; it was an integral component of the card payment system that allowed him to shop at the affected store in the first place. Because his indemnity came from "a source related to [SuperValu] through contract," the collateral source doctrine does not apply. *Segovia v. Romero*, 380 Ill. Dec. 411, 8 N.E.3d 581, 587 (Ill. App. Ct. 2014); *see also Am. State Bank v. Union Planters Bank, N.A.*, 332 F.3d 533, 538 (8th Cir. 2003) (applying Arkansas's collateral source doctrine).

*In re SuperValu, Inc.*, 925 F.3d 955, 965 (8th Cir. 2019) (final alteration in original). None of the cases cited by *SuperValu* declined to apply the collateral source doctrine under similar circumstances: *Schnuck Markets* merely describes the basic functioning of debit and credit card payments system, 887 F.3d at 07–08; *American State Bank* declined to apply the collateral source rule where the party providing the purportedly collateral benefit had received the converted funds and was "likely liable to [the plaintiff] for conversion" jointly with the defendant, 332 F.3d at 538; and *Segovia* declined to apply the collateral source rule where the *defendant*'s insurance company, pursuant to contractual obligations *to the defendant* under the *defendant's* insurance policy, had already paid on his behalf, 380 Ill. Dec. at 416–17.

This Court concludes that the California Supreme Court would likely apply the collateral source rule on the facts of this case. While Bank of America presumably had some contractual relationship either directly or indirectly with AT&T to allow AT&T to accept payment, there is no indication that Bank of America's obligation or decision to refund Cottrell's payment arose from that relationship, rather than from Bank of America's contract or relationship with Cottrell. And while Bank of America might seek to recoup such losses from a seller that received a fraudulent charge, an insurer might also seek to recover from a tortfeasor. *See, e.g.*, *State Farm Gen. Ins. Co. v. Wells Fargo Bank, N.A.*, 143 Cal. App. 4th 1098, 1106 (2006) (discussing an insurer's right to

pursue a claim against a tortfeasor through subrogation). Fraud protection on a credit card serves a similar function to any other form of insurance, and the same public policies of "encouraging citizens to purchase and maintain insurance for personal injuries and for other eventualities," *Helfend*, 2 Cal. 3d at 10, also support encouraging citizens to choose credit cards that provide protection from fraud.

On the facts alleged, Bank of America played no role in the wrongdoing that led Cottrell to pay for a service he declined to purchase. The Court therefore concludes that Bank of America is sufficiently independent of AT&T to apply the collateral source rule. AT&T's motion to dismiss Cottrell's conversion claim is DENIED.

**E. Cottrell's UCL Claim**

AT&T moves to dismiss Cottrell's UCL claim for failure to meet the statutory standing requirement of having "lost money or property as a result of the unfair competition." *See* Cal. Bus. & Prof. Code § 17204. "[N]onrestitutionary disgorgement is not an available remedy in an individual action under the UCL . . . ." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148–49 (2003). Cottrell argues that the collateral source rule allows his UCL claim to proceed despite the reimbursement he received from Bank of America.

Some district court decisions have held that the collateral source rule does not allow a plaintiff to bring a UCL claim based on money the plaintiff's insurer paid to a third party. *See Williamson v. Genentech, Inc.*, No. 19-cv-01840-JSC, 2020 WL 1281532, at *4 (N.D. Cal. Mar. 18, 2020) (citing *Krueger v. Wyeth, Inc.*, 396 F. Supp. 3d 931, 955 n.9 (S.D. Cal. 2019); *Lucas v. Breg, Inc.*, 212 F. Supp. 3d 950, 964–65 (S.D. Cal. 2016)). *Williamson*, *Krueger*, and *Lucas* all concerned plaintiffs who never paid anything to the defendant. Here, Cottrell alleges that he paid AT&T, and Bank of America's fraud department later reimbursed him for those payments. FAC ¶¶ 25–26.

The Court is not aware of any decision addressing whether a more straightforward application of the collateral source doctrine—where the plaintiff has paid the defendant, and later received reimbursement from a third party—is permissible under the UCL. In a criminal restitution case, however, a California appellate court noted precedent holding both that "the

object of restitution is the same in the context of a criminal conviction as it is under unfair competition law" and that the collateral source doctrine can apply to restitution for crime victims. *People v. Bergin*, 167 Cal. App. 4th 1166, 1171 (2008) (citing *People v. Giordano*, 42 Cal. 4th 644, 658 (2007); *People v. Hamilton*, 114 Cal. App. 4th 932, 944 (2003)). The California Supreme Court's decision in *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758 (2010), is also informative. While AT&T is correct that *Clayworth* does not discuss the collateral source rule by name, *see* Reply at 4–5, the court held that pharmacies who lost money in purchasing overpriced drugs from the defendant manufacturers had standing under the UCL even if "they were able to mitigate fully any injury by passing on the overcharges" to their customers, and that the defendants' argument to the contrary "conflates the issue of standing with the issue of the remedies to which a party may be entitled." 49 Cal. 4th at 789. The California Supreme Court concluded that the "Pharmacies indisputably lost money when they paid an allegedly illegal overcharge," and "decline[d the] Manufacturers' invitation to turn this facially simple threshold condition into a requirement that plaintiffs prove compensable loss at the outset." *Id.*

Two district court decisions have held that a plaintiff who receives a full refund from the defendant before bringing suit lacks standing under the UCL. *Stearns*, 763 F. Supp. 2d at 1151 (granting a motion to dismiss); *Gonzalez*, 2012 WL 10621, at *5–7 (denying a motion for class certification). Neither case discusses *Clayworth* or its distinction between initial loss sufficient to confer statutory standing and subsequent mitigation of loss that might implicate entitlement to restitution. Moreover, assuming for the sake of argument that *Stearns* and *Gonzalez* are consistent with *Clayworth*, neither implicates the collateral source rule, because the plaintiffs in those cases received refunds *from the defendants*, not from unrelated third parties.

Cottrell "lost money," and thus acquired statutory standing under the UCL, when AT&T charged him for a service he had declined to purchase. While a refund from AT&T might have negated that loss under the reasoning of *Stearns* and *Gonzalez*, the Court holds that the collateral source rule applies to this claim, and that Cottrell's reimbursement by third party Bank of America is therefore not relevant to his claim against AT&T. AT&T's motion is DENIED as to Cottrell's UCL claim.

United States District Court
Northern District of California

## IV. CONCLUSION

For the reasons discussed above, AT&T's motion is GRANTED as to Cottrell's CCRA claim, which is DISMISSED with leave to amend no later than September 4, 2020. The motion is otherwise DENIED.

**IT IS SO ORDERED.**

Dated: August 19, 2020

JOSEPH C. SPERO
Chief Magistrate Judge